UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED
MAY 17 2006

| | | |
|---|---|---|
| JAIME ESTENSON, | * | CIV 03-4079 |
| | * | CR 01-40080 |
| Movant, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jaime Estenson ("Estenson") has filed a 28 U.S.C. § 2255 motion to vacate her sentence. Estenson sets forth three principal claims: 1) ineffective assistance of counsel; 2) prosecutorial misconduct; and 3) failure to receive a sentence reduction for her cooperation with the government. The respondent filed an answer to the motion, a brief in support of the answer, and an affidavit of Timothy J. Langley, Estenson's court-appointed trial attorney. Later, Estenson filed a response. For the reasons discussed below, the motion to vacate will be denied.

## BACKGROUND

In his affidavit, Timothy Langley ("Langley") accurately summarized some of the evidence presented at trial regarding the circumstances of Estenson's arrest:

> After Ms. Estenson had begun to move into her new rental residence the day before her arrest, painters hired by the landlord discovered drugs and drug paraphernalia in the empty house. Law enforcement was called. While officers were collecting evidence with the permission of the landlord, Ms. Estenson pulled into the driveway. When police officers approached her, told her why they were there, and told her they would like to ask her some questions, she became upset and attempted to leave. Police officers testified that she appeared to reach into her pocket as law enforcement moved to prevent her from leaving, and search of that pocket turned up a butterfly knife. She was then placed under arrest for carrying a concealed weapon, and a

search of Ms. Estenson and her vehicle incident to this arrest turned up additional incriminating evidence.

(Doc. 9, ¶ 23.) Estenson was indicted on one count of possession with intent to distribute a controlled substance, methamphetamine. Langley was appointed counsel for Estenson. A jury convicted Estenson after a two-day trial. On April 2, 2002, Estenson was sentenced to a term of imprisonment of 210 months. No appeal was filed. She filed the pending § 2255 motion on April 7, 2002. The government filed an answer and moved to dismiss the motion for failure to state a claim. Estenson filed a motion to extend the time to reply to the government's motion to dismiss. She contended that she needed a copy of her trial transcript and some discovery from the government in order to prepare her reply.

Because Estenson did not appeal her conviction, a trial transcript was not created or entered into the record. Under 28 U.S.C. § 753(f), the government is required to provide a free transcript to a § 2255 petitioner only "if the trial judge or circuit judge certifies that the suit or appeal is not frivolous and the transcript is needed to decide the issue presented by the suit or appeal." As stated in the Order issued on November 16, 2004, this Court reviewed Estenson's § 2255 claims and her motion for a free transcript was denied because it did not appear that a transcript of the trial was needed to decide the issues presented. The issues raised by Estenson arose out of occurrences outside of the courtroom or out of events in the courtroom of which Estenson was aware.[1]

The discovery issues eventually were resolved, and Estenson filed her reply on February 22, 2005. However, prior to filing her reply, on August 23, 2004 Estenson filed a supplement to her § 2255 based on the United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296

---

[1] In her § 2255 petition, at the end of her section of ineffective assistance of counsel claims, Estenson lists some other issues she would like to raise if they "become evident" from reviewing the trial transcript. (Doc. 1, p. 5A-5.) Estenson is not entitled to a free transcript simply in the hope that something else will strike her as a potential claim.

2

(2004).[2] Estenson contended that enhancements to her sentence were unconstitutional because they were based on factors that were not found by a jury. Subsequently, the Supreme Court granted certiorari in *United States v. Booker*, 543 U.S. 220 (2005), to decide whether the federal sentencing guideline scheme was constitutional. In *Booker*, the Court held first that the Sixth Amendment right to a jury trial, as construed in *Blakely*, attaches to findings that enhance a defendant's sentence under the federal sentencing guidelines. *See Booker*, 543 U.S. at 230-244. In a separate majority opinion, the Court invalidated the provisions of the Sentencing Reform Act that make the federal guidelines mandatory. The Court concluded that the Act, so modified, "makes the Guidelines effectively advisory." *Id.* at 244-267. After *Booker*, a sentencing court is required "to consider Guidelines ranges" but is permitted "to tailor the sentence in light of other statutory concerns as well. . . ." *Id.* at 245-246 (citing 18 U.S.C. § 3553(a)). In its response to Estenson's supplement, the government argued that *Booker* is not to be applied retroactively to Estenson's § 2255 action. Subsequently, the Eighth Circuit ruled that *Booker* "does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit movants in collateral proceedings." *Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir. 2005). Thus, Estenson may not invoke *Booker* retroactively to invalidate her sentence, and she is not entitled to relief on the claim asserted in her supplement. The Court will address the claims raised in Estenson's original motion.

## DISCUSSION

A prisoner in custody pursuant to a federal conviction and sentence may move the court that imposed the sentence to vacate, set aside or correct the sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

---

[2]In *Blakely*, the Supreme Court ruled that a Washington state sentencing guideline scheme violated the defendant's Sixth Amendment right to trial by jury by permitting his sentence to be enhanced above the guideline range based on factors not found by a jury beyond a reasonable doubt, even though the resulting sentence was less than the statutory maximum. *See Blakely*, 542 U.S. at 303-304.

3

28 U.S.C. § 2255. The right of collateral review is an extraordinary remedy and "will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). By failing to file a direct appeal, Estenson procedurally defaulted all of her claims except those for ineffective assistance of counsel.[3] A movant is entitled to relief under §2255 only for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may only raise that claim in a § 2255 proceeding if the defendant demonstrates cause and prejudice for the default or by demonstrating actual innocence." *United States v. Bailey*, 235 F.3d 1069, 1071-1072 (8th Cir. 2000). Estenson fails to meet the "cause" prong of the exception because her claims could have been, but were not, raised on direct appeal. Furthermore, Estenson fails to meet the "prejudice" prong of the exception because the evidence in the case was sufficient to allow the jury to find her guilty, regardless of the alleged errors she believes occurred at trial and sentencing. Estenson is also unable to prove her actual innocence of the crime. In order "to establish actual innocence, petitioner must demonstrate that, in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)); *see Bailey*, 235 F.3d at 1072. The evidence in this case was sufficient to find that reasonable jurors would convict Estenson. Therefore, Estenson is unable to prove actual innocence. Nonetheless, the government addressed all of Estenson's § 2255 claims on the merits, and the Court will do so.

A. <u>Ineffective Assistance of Counsel</u>

A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that her lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Judicial review of trial counsel's effectiveness is highly deferential, and this

---

[3]Ineffective assistance of counsel claims should be brought in 28 U.S.C. § 2255 proceedings rather than on direct appeal because they usually involve facts outside the record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003).

4

Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002). To establish prejudice, Estenson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Estenson claims that she was prejudiced by the ineffective assistance of her trial attorney, alleging that Langley: 1) failed to allow Estenson to testify at trial; 2) did not have a fingerprint analysis done on the drug packaging materials; 3) should have presented mitigating factors and moved for a downward departure at the sentencing hearing; 4) neglected to keep in contact with her; and 5) failed to file an appeal.

### 1. Testifying at Trial

Estenson argues that her constitutional rights were violated when Langley did not let her testify at trial. Langley states in his affidavit that he advised Estenson of her right to testify, but they agreed she would not testify. His notes reflect that Estenson "says she is willing to testify but agrees it would be in her best interests not to. She takes my advice not to testify." (Doc. 9, ¶ 3.) Estenson admits that she did not inform the Court of her desire to testify. (Doc. 20, p.1-2.) If an accused wishes to exercise the right to testify, the accused must express to the Court the desire to do so at the appropriate time "'or a knowing and voluntary waiver of the right is deemed to have occurred.'" *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) (quoting *United States v. Blum*, 65 F.3d 1436, 1444 (8th Cir. 1995)). Thus, Estenson waived her right to testify.

Even if Estenson had not waived her right to testify, and if Langley somehow overrode her desire to testify, she would not prevail on this claim because she cannot show that she suffered prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. She says she would have testified about four things. First, that on October 5, 2001, after she signed the lease for the house on 4505 E. Clark St., she went to her mother's house where she spent the night. Estenson claims this

5

would have shown she was not at the rental house after she signed the lease. Secondly, Estenson would have testified that she knew witness Kevin Pack only from the Rock Rapids County Jail where they were both housed at the same time, that Pack got his information about Estenson's alleged crime by covertly looking at her file and overhearing a conversation Estenson had with her attorney, and that this would have reflected on Pack's credibility.[4] Third, she would have testified that the objects hanging on the walls in the basement of the residence where she was arrested did not belong to her. According to Estenson, this would have shown that she was not at the residence where the drugs were found until the time of her arrest on October 6, 2001. Finally, Estenson indicates that she wanted to testify about her history of child abuse so it "would have been before the Court for a possible downward departure."

The fourth item of testimony would have been objectionable because it is not relevant to any of the issues at trial, and testimony about Estenson's childhood would have shed no light on her guilt or innocence of the crime charged. The other testimony Estenson proposes would have been offered for the proposition that the methamphetamine found at her rental house did not belong to her. As documented in her presentence report, Estenson admitted to the probation officer who prepared the report that the drugs belonged to her and that she gave methamphetamine to friends who came to her house. Prohibiting her from testifying that the methamphetamine could not have been hers because she was not at the rental house the night before her arrest was not ineffective assistance of counsel because "there is no right whatever -- constitutional or otherwise -- for a defendant to use false evidence." *Nix v. Whiteside*, 475 U.S. 157, 173 (1986) (no prejudice and no ineffective assistance of counsel when counsel dissuaded defendant from providing false testimony).

---

[4]Pack testified that, during their time together in jail, Estenson told him she had rented a house and hid two pounds of methamphetamine in the furnace room. Estenson also told Pack she would not be convicted because she left no fingerprints on the drug packaging.

6

Even if Estenson did have a right to offer what we now know would have been false testimony at trial, she still would not prevail on this claim.[5] At trial, the government produced ample evidence that the methamphetamine found in Estenson's rental house belonged to her. In light of the overwhelming amount of evidence of her guilt that was presented at trial, the Court concludes that Estenson's proposed testimony would not have resulted in an acquittal.

### 2. Fingerprint Analysis

In her second allegation of ineffective assistance of counsel, Estenson contends that attorney Langley should have ordered a fingerprint analysis on the drug packaging materials. Estenson bears a heavy burden to overcome the strong presumption that trial counsel acted competently. *Strickland*, 466 U.S. at 689. The reasonableness of counsel's performance must be evaluated by considering the circumstances faced by the attorney at the time in question, without the benefit of hindsight. *Sanders v. Trickey*, 875 F.2d 205, 207 (8th Cir. 1988). Langley explained in his affidavit that, given his "intimate knowledge of the facts" of the case, he "judged that pursuing this evidence would most likely either prove fruitless or actually incriminate" Estenson. (Doc. 9, ¶ 6.) The Court cannot say that this decision fell below an objective standard of reasonableness. Even if Estenson had met the first prong of the *Strickland* test, it has not been shown that the result of the proceedings would have been different. There was overwhelming evidence at trial that the drugs belonged to Estenson.

### 3. Mitigating Evidence at Sentencing

Estenson's third claim is that Langley rendered ineffective assistance when he did not request a downward departure at sentencing under USSG § 5K2.0 because Estenson had family problems, her brother had been shot and killed, she had been abused as a child, and her addiction to controlled substances began at an early age. Estenson admits that this information was presented to the Court through the Presentence Investigation Report. Regarding this issue, Langley attested:

---

[5] If Estenson had testified falsely at trial, she, like most other defendants similarly situated, would probably not have made a contrary admission to the presentence writer or anyone else after trial.

> I knew that Ms. Estenson came from a troubled family. I knew that she had received counseling following the death of her brother and that she had been on medication for depression. I knew that she had begun using drugs as a young teenager. The Presentence Investigation Report generally reflects this information. However, because the effects of drug abuse do not constitute grounds for a downward departure under the Guidelines, and because I did not view her troubled family history as taking her case out of the heartland, I found I could not develop a coherent basis for requesting a downward departure.

(Doc. 9, ¶ 9.) In order to prevail on this issue, Estenson must show a reasonable probability that the Court would have granted such a departure had it been sought.

Under the Sentencing Guidelines, a court may impose a sentence below the guideline range where a mitigating circumstance exists "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that . . . should result in a sentence different from that described." USSG § 5K2.0(a)(1). Estenson cannot show that there is a "reasonable probability" that the Court would have imposed a shorter sentence had Langley moved for a downward departure, particularly because information she now relies upon is in the presentence report, which was before the Court at the time of sentencing. *Strickland*, 466 U.S. at 694. Even if Langley had made the argument that the Court should depart downward based on Estenson's history, this Court, in its discretion, most likely would not have departed downward because this case does not fall outside the heartland of cases that the Sentencing Guidelines were intended to cover. Thus, Langley did not give ineffective assistance by failing to argue that Estenson was entitled to a downward departure based upon USSG § 5K2.0 because to do so would have been futile. *Garrett v. United States*, 78 F.3d 1296, 1303 n. 11 (8th Cir. 1996) (no ineffective assistance for counsel's failure to perform acts appearing to be futile or fruitless). In addition, because the Court most likely would not have granted a motion for downward departure based on the record at the time of the sentencing, and no new facts presented with the present § 2255 motion change that view, Estenson cannot establish prejudice, even if Langley's failure to move for a downward departure constituted defective performance.

### 4. Client Contact

In her initial petition, Estenson asserts that Langley "rarely visited her" and that is why he was not more familiar with her history and background. She also claims that she "never saw any written plea agreement." Langley's affidavit sets forth five dates that he was in court with Estenson and thirteen additional days that he had contact with her between the date of her initial appearance on October 22, 2001 and the date of her sentencing on April 2, 2002. Ten of the thirteen out-of-court contacts were face-to-face meetings at the jail. In addition to Langley's contacts with Estenson, his office investigator, Adel Valdes, also met with Estenson in October and November of 2001. In her reply, Estenson does not dispute that these meetings took place, but states that "her contact with her attorney was limited as the record shows by all of the unresolved issues." The fact that Estenson has raised a number of issues in her § 2255 petition does not lead to the conclusion that Langley's contact with her was constitutionally deficient. A review of the list of contacts Langley had with Estenson shows that Langley had significantly more contact with her than attorneys whose assistance has been found effective. *Cf. Lahay v. Armontrout*, 974 F.2d 979, 981 (8th Cir. 1992) (attorney adequately conferred with client where client met with attorney at least twice and attorney had access to prior attorney's file, which included notes from prior attorney's meetings with client). Estenson has not shown that additional consultation would have affected the result of the trial. She identified no information about the crime or her actions that Langley was not aware of, and that further consultations with Langley could have uncovered. Under these circumstances, Estenson was not prejudiced and Langley was not ineffective.

Regarding the issue of a plea agreement, Langley points out that after Judge Simko recommended denial of the motion to suppress, Langley moved to continue the proceedings on December 10, 2001, to provide additional time to discuss the possibility of a plea agreement with Estenson. The government submitted a proposed plea agreement and factual basis statement and Langley visited Estenson at the Lyon County Jail in Rock Rapids, Iowa on December 14, 2001, to discuss the plea agreement and other alternatives. They talked about it again by telephone on January 3, 2002. He emphasized that she could enter a guilty plea without entering into a formal agreement with the government. She rejected that option. He told her that there was no chance she

would be acquitted based on the evidence and he asked her to think about her decision overnight. The next day, Langley, Adel Valdes and Assistant Federal Public Defender William Delaney visited Estenson at the Minnehaha County Jail. Estenson rejected both a plea and a court trial and insisted on her right to a jury trial. They discussed the fact that a conviction was guaranteed; that she would not get a sentence reduction for acceptance of responsibility; that there was no evidence, testimony or defense to put before the jury; and that, because she did not want to leave an impression that she cooperated, she could enter an open plea of guilty without an agreement with the government. Estenson then reaffirmed her decision to go to trial. Langley spoke to Estenson again about the possibility of a plea agreement on January 8, 2002, the morning of trial. She said that she would not consider a guilty plea, but that she would take his advice and not testify.

Langley's assertions and Estenson's failure to dispute them indicate that Langley's conduct in regard to the potential of a plea fell well within the range of reasonable professional assistance. Even if Estenson could overcome the strong presumption that counsel's representation was reasonable, she has failed to show that she suffered any prejudice, the second part of the *Strickland* test. In order to establish prejudice in this instance, Estenson must show that, but for her counsel's error, she would have pled guilty and not gone to trial. The record indicates that Estenson would not consider anything other than a jury trial.

### 5. Notice of Appeal

Estenson contends that Langley should have appealed her conviction and sentence. Langley's affidavit shows that, at the time of her sentencing, he told Estenson an appeal would be unsuccessful, that her best hope was for the government to file a Rule 35 Motion, and that an appeal would diminish the chances of that happening. He urged her to forego an unavailing appeal in favor of the "real hope that a Rule 35 Motion might be filed." (Doc. 9, ¶ 18.) Attached to Langley's affidavit are copies of two letters he wrote to Estenson regarding an appeal. The first, dated April 8, 2002, sets forth Langley's opinion that there was no reason to appeal. After the first letter, Estenson left a message with Langley indicating that she wanted to appeal. Langley then visited with Estenson on April 16, 2002, and she decided not to pursue an appeal. The second letter from Langley, dated

April 17, 2002, memorializes that April 16 conversation and indicates that, after discussing the issue, Estenson had decided an appeal would not do her any good and could very well cause her harm, so she had instructed Langley not to file an appeal. The April 17 letter was hand-delivered on that day to Estenson while she was in jail, and she did not denote a change of heart after that. In fact, that was her last communication with Langley on the subject of an appeal. Estenson does not dispute the April 16 conversation with Langley, or the contents of the two letters. She clearly knew about her appeal rights. It appears she believes that because she was indecisive about whether to appeal, Langley should have filed an appeal regardless of her instructions not to do so. The fact that Estenson subsequently regretted her decision not to appeal, after knowingly and intelligently waiving her right to appeal, does not make Langley's failure to file an appeal ineffective assistance of counsel.

### B.   Prosecutorial Misconduct

Estenson alleges three prosecutorial misconduct claims. First, she contends that government witnesses waiting in the U.S. Marshal's office watched a television monitor showing the trial. Second, she asserts that an inmate who stole her legal file and then returned it to her was allowed to testify at trial. Third, Estenson avers that the prosecutor allowed witness Otto Gaher to testify in place of "the unavailable Alex Salazar, when only Salazar had given a prior statement." A claim of prosecutorial misconduct is reviewed to determine whether the conduct complained of "unduly prejudiced the defendant's opportunity for a fair trial" *United States v. Conrad,* 320 F.3d 851, 855 (8th Cir. 2003). To prevail under this standard, Estenson must show that the prosecutor's remarks or conduct were improper and, second, that such remarks or conduct prejudicially affected her substantial rights so as to deprive her of a fair trial. *Id.* Nothing leads the Court to conclude that the prosecutor acted improperly in this case. Moreover, even if there was some impropriety, Estenson has not demonstrated any resulting prejudice.

### C.   Sentence Reduction

Lastly, Estenson asserts that she was unjustly sentenced because she received no credit for her cooperation with the government. Estenson did not have a plea agreement with the government,

11

and no cooperation took place prior to trial. According to the government, Estenson agreed to a debriefing with agents from the United States Drug Enforcement Administration after the trial. The information provided was of little use to law enforcement officials and her credibility was lacking. Langley asked the government to consider filing a Rule 35(b) motion for reduction of sentence for substantial assistance, but the government declined to do so. As Langley noted in his affidavit, "I cannot say I was entirely surprised that the government elected not to file a Rule 35 motion." The Court is aware of no basis for granting relief on this claim.

D.  Evidentiary Hearing

The "motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." For this reason, Estenson's request for an evidentiary hearing is denied. *See* 28 U.S.C. § 2255.

E.  Certificate of Appealability

When the district court has denied a motion under 28 U.S.C. § 2255, the petitioner may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Estenson has not made a substantial showing that there was an error at trial or that her lawyer was constitutionally ineffective in representing her. Accordingly,

IT IS ORDERED:

1.  That Petitioner's request for an evidentiary hearing is denied.

2.  That the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255, Doc. 1, is denied; and

12

3. That a Certificate of Appealability shall not issue on any of the issues raised in the § 2255 motion.

Dated this 17th day of May, 2006.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *[signature]* Shelly Margulies
(SEAL)          DEPUTY

13